**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

```
_____
                                    )
ARCHER AVELIN,                      )
                                    )
        Plaintiff,                  )
                                    )
     v.                             )   C.A. No. 21-372 WES
                                    )
KYLE OMAN and PORTSMOUTH            )
POLICE DEPARTMENT,                  )
                                    )
        Defendants.                 )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

This case arises from a traffic stop that took place on February 17, 2020.  Pro se Plaintiff Archer Avelin alleges that the traffic stop and subsequent search and removal of his car violated the Fourth Amendment and 18 U.S.C. §§ 31(a)(6) and (a)(10).  See Compl. at 4, ECF No. 1.  Defendant Portsmouth Police Department has moved for summary judgment.  See Def.'s Mem. L. Supp. Mot. Summ. J. ("Def.'s Mem.") 1, ECF No. 16-1.  For the following reasons, Defendant's Motion for Summary Judgment, ECF No. 16, is GRANTED.

I.  Background

On the evening of February 17, 2020, Plaintiff was driving from Fall River, Massachusetts, to Middletown, Rhode Island, and stopped at a Cumberland Farms gas station.  Compl. at 11; Def.'s Statement Undisp. Facts ("DSUF") ¶ 1, ECF No. 17.  Upon exiting

the gas station, Plaintiff pulled out of the parking lot and made
a right turn onto East Main Road without using his turn signal.
Compl. at 11; DSFU ¶¶ 1-2.   Officer JeanMarie Stewart of the
Portsmouth Police Department was stationed in her police cruiser
across the street and saw Plaintiff's failure to signal, which
prompted her to check his vehicle's registration status.   DSUF
¶ 3.   Finding that the registration was suspended, Officer Stewart
pulled onto East Main Road behind Plaintiff, activated her
cruiser's emergency lights, and pulled Plaintiff over in a nearby
parking lot.   Compl. at 11; DSUF ¶ 4.   Officer Stewart approached
Plaintiff's car and informed him that she stopped him for failing
to signal when he made the turn.   Compl. at 11; DSUF ¶¶ 5, 7.   She
asked Plaintiff for his license, proof of insurance, and
registration.   Compl. at 11; DSUF ¶ 8.   Plaintiff responded with
confusion, questioned whether the stop was justified, and informed
Officer Stewart that because he was "traveling" and not "driving,"
he was not required to have a driver's license.[1]   Compl. at 11;
DSUF ¶¶ 6, 9-10.

Officer Stewart called for backup, and, after the arrival of
Sergeant Lee Trott, managed to get Plaintiff to provide his

---

[1] Plaintiff asserts that "driving" is "a commercial act and
involve[s] transporting passengers, goods or services for a fee."
Compl. at 11.   Because Plaintiff was "alone in [his] car and had
nothing in it that [he] was transporting for a fee," he argues
that he was "traveling" rather than "driving."   Id.

driver's license.  Compl. at 11; DSUF ¶¶ 12, 15.  Officer Stewart

then contacted the dispatcher and requested a tow service.  Compl.

at 11; DSUF ¶ 19.  She then asked Plaintiff to step out of the car

and searched both him and the car, finding two small pocketknives

in the car.  Compl. at 11; DSUF ¶¶ 20-21.  R&A Towing arrived

shortly thereafter and towed the car to its place of business at

3279 East Main Road.[2]  Compl. at 11; DSUF ¶ 22.

Officer Stewart issued Plaintiff a District Court Notice to

Appear for driving with a suspended license, second offense, which

he refused to sign, and issued him a citation for operating a motor

vehicle with a suspended registration, operating a motor vehicle

without evidence of insurance, and failure to use a turn signal.

DSUF ¶¶ 24-26.

II.  Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure,

summary judgment is appropriate when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment

as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  The Court must view the evidence in the light most

---

[2] Kyle Oman, who Plaintiff alleges towed the car on behalf of
R&A Towing, see Compl. at 11, was initially a defendant in this
action but was voluntarily dismissed in June 2022.  See Dismissal
Stipulation, ECF No. 15.

favorable to the nonmoving party.  Morrissey v. Boston Five Cents
Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).  "The moving party bears
the initial burden of demonstrating a lack of a material issue of
fact, which shifts the burden to the non-moving party, who then
must show the trier of fact could rule in his favor with respect
to each issue."  Ferro v. R.I. DOT ex rel. Lewis, 2 F. Supp. 3d
150, 156 (D.R.I. 2014) (quoting Borges ex rel. S.M.B.W. v. Serrano-
Isern, 605 F.3d 1, 5 (1st Cir. 2010)).  "A genuine issue of fact
exists where the evidence is such that a reasonable jury could
return a verdict for the nonmoving party."  Global ePoint, Inc. v.
Gtech Corp., 58 F. Supp. 3d 178, 184 (D.R.I. 2014) (quoting Taylor
v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009)).

III. Analysis

    Plaintiff's  Complaint  cites  the  Fourth  Amendment  and
18 U.S.C. §§ 31(a)(6) and (a)(10) but does not otherwise contain
any particular counts or theory of liability.  Compl. at 4.  The
Court therefore assumes that Plaintiff intended to challenge both
the traffic stop and the search and removal of the vehicle under
the Fourth Amendment and the cited statutes.[3]

---

    [3] Plaintiff also asserts in his supplemental discovery
response that his rights under the Ninth Amendment were violated
as a result of the traffic stop.  Def.'s Ex. E at 2, ECF No. 16-
2.  The Ninth Amendment provides that the "enumerations in the
Constitution, of certain rights, shall not be construed to deny or
disparage others retained by the people."  U.S. Const. amend. IX.
The amendment "does not create substantive rights beyond those
conferred by governing law."  Vega-Rodriguez v. Puerto Rico Tel.

A. Fourth Amendment

    1. Traffic Stop

"Under the Fourth Amendment, a traffic stop constitutes a seizure of both the stopped vehicle and its occupants, meaning the stop 'must satisfy a standard of objective reasonableness.'" United States v. Lawrence, 675 F. App'x 1, 2 (1st Cir. 2017) (quoting United States v. Arnott, 758 F.3d 40, 43 (1st Cir. 2014)). "A traffic stop is constitutional if an officer has a reasonable suspicion of unlawful conduct involving a motor vehicle or its operation." United States v. Jenkins, 680 F.3d 101, 104 (1st Cir. 2012) (citing United States v. Chhien, 266 F.3d 1, 5-6 (1st Cir. 2001)). Here, Plaintiff's failure to properly signal when turning from the Cumberland Farms parking lot onto East Main Road provided Officer Stewart with reasonable suspicion to pull him over. See Lawrence, 675 F. App'x at 2-3 ("[A] traffic violation is an objectively reasonable basis for a traffic stop."); see also R.I. Gen. Laws § 31-16-5 (requiring "an appropriate signal" to "turn a vehicle from a direct course or move right or left upon a roadway").

Plaintiff's registration status provided additional reasonable suspicion for his stop. See R.I. Gen. Laws §§ 31-3-1 ("It is a civil violation for any person to operate . . . upon any

---

Co., 110 F.3d 174, 182 (1st Cir. 1997).  Therefore, Plaintiff cannot sustain a claim under the Ninth Amendment.

highway any vehicle of a type required to be registered . . . which is not registered . . . .").  Plaintiff violated two additional state laws by driving with a suspended license and no insurance, which justified continuing the stop and seizure.  See R.I. Gen. Laws §§ 31-10-1(a) ("No person . . . shall drive any motor vehicle upon a highway in this state unless that person has a valid license as an operator or chauffeur . . . ."), 31-11-18(a) ("Any person who drives a motor vehicle on any highway of this state . . . who drives . . . at a time when his or her license to operate is suspended, revoked, or cancelled . . . may be guilty of a misdemeanor.").  Therefore, summary judgment in favor of Defendant is GRANTED as to Plaintiff's claim that the traffic stop violated his Fourth Amendment rights.

2. Search and Removal of Car

To the extent that Plaintiff's Fourth Amendment claim arises from the search and removal of his car, Defendant argues that the community caretaking exception to the Fourth Amendment's probable cause requirement defeats Plaintiff's claim.  Def.'s Mem. 7.  The community caretaking exception "stems from the recognition that police officers 'perform a multitude of community functions apart from investigating crime,' including, frequently, 'dealing with vehicle-related problems.'"  Boudreau v. Lussier, 901 F.3d 65, 71 (1st Cir. 2018) (quoting United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006); United States v. Rodríguez-Morales, 929 F.2d

780, 785 (1st Cir. 1991)).  "[I]t is officers' non-investigatory purpose and motives when acting as 'community caretakers' that justifies this exception to the warrant requirement." Id. (citing Colorado v. Bertine, 479 U.S. 367, 381 (1987)).  In the automobile context, "[t]he imperatives of the [F]ourth [A]mendment are satisfied in connection with the performance of . . . community caretaker tasks, so long as the procedure employed (and its implementation) is reasonable." Rodríguez-Morales, 929 F.2d at 785.

Inventory searches fall squarely within the community caretaking function's established ambit. See Bertine, 479 U.S. at 381 (Marshall, J., dissenting) (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)) ("Inventory searches are not subject to the warrant requirement because they are conducted by the government as part of a 'community caretaking' function, 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'").  Inventory searches of impounded vehicles serve "three distinct needs: the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." South Dakota v. Opperman, 428 U.S. 364, 369 (1976) (citations omitted).  The search of Plaintiff's vehicle served these purposes, in particular protection from potential

danger that could arise if there were weapons in the car, rather than purposes of criminal investigation.   Therefore, because the search was conducted pursuant to the community caretaking function, it did not violate the Fourth Amendment.

Regarding the removal of the vehicle, the officers had "a strong noninvestigatory justification for removing it from the [road].   Upon ascertaining that [the] occupant was [not] properly licensed to drive, the decision not to let the vehicle continue on its journey was quintessentially reasonable."   Rodríguez-Morales, 929 F.2d at 785.   With Plaintiff unable to legally continue to drive, "it was completely appropriate for the police to impound the car."   Id. at 785-86.

B. 18 U.S.C. §§ 31(a)(6) and (a)(10)

Plaintiff cites 18 U.S.C. §§ 31(a)(6) and (a)(10) as additional bases for Defendant's liability.   See Compl. at 4. Subsection (a)(6) of the statute provides a definition of "motor vehicle,"[4] while section (a)(10) defines the term "used for commercial purposes."[5]   Because these provisions contain only

---

[4] Subsection (a)(6) provides, in full, "[t]he term 'motor vehicle' means every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, passengers and property, or property and cargo."   18 U.S.C. § 31(a)(6).

[5] Subsection (a)(10) provides, in full, "[t]he term 'used for commercial purposes' means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or

definitions, they do not provide a cause of action.  The statutory provisions subsequent to § 31 pertain to destruction of aircrafts and motor vehicles, penalties when death results from such destruction, and imparting or conveying false information, none of which are applicable here.  See 18 U.S.C. §§ 32-35.  Therefore, Defendant is entitled to summary judgment on this claim.

IV.  Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 16, is GRANTED.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date:  December 14, 2022

---

indirectly in connection with any business, or other undertaking intended for profit."  18 U.S.C. § 31(a)(10).